ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of - | ) | |
| | ) | |
| Flatiron/Dragados/Sukut Joint Venture | ) | ASBCA Nos. 63019, 63020 |
| | ) | |
| Under Contract No. W91238-17-C-0025 | ) | |

APPEARANCES FOR THE APPELLANT:    Michael A. Branca, Esq.
　　　　　　　　　　　　　　　　　Patrick J. Greene, Jr., Esq.
　　　　　　　　　　　　　　　　　Nick R. Hoogstraten, Esq
　　　　　　　　　　　　　　　　　　Pecker & Abramson, P.C.
　　　　　　　　　　　　　　　　　　Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
　　　　　　　　　　　　　　　　　　Engineer Chief Trial Attorney
　　　　　　　　　　　　　　　　　Colby K. Stewart, Esq.
　　　　　　　　　　　　　　　　　Amanda R. Fuller, Esq.
　　　　　　　　　　　　　　　　　Alfred L. Faustino, Esq.
　　　　　　　　　　　　　　　　　Timothy A. Holiday, Esq.
　　　　　　　　　　　　　　　　　Schuyler Lystad, Esq.
　　　　　　　　　　　　　　　　　Robert W. Scharf, Esq.
　　　　　　　　　　　　　　　　　　Engineer Trial Attorneys
　　　　　　　　　　　　　　　　　　U.S. Army Engineer District, Sacramento

OPINION BY ADMINISTRATIVE JUDGE MCNULTY
ON THE GOVERNMENT'S MOTION TO DISMISS

Before the Board is the government's motion to dismiss for failure to state a claim. Appellant, Flatiron/Dragados/Sukut Joint Venture (FDS) opposes the motion. For the reasons stated below, we deny the motion.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

1. Under date of September 18, 2017, the government's contracting officer advise FDS in writing that it had been awarded Contract No. W91238-17-C-0025, the Isabella Lake Dam Safety Modification Project (DSMP), Phase II, Dams and Spillway (R4, tab 16).

2. The contract incorporated by reference the following standard Federal Acquisition Regulation (FAR) contract clauses pertinent to the issues raised by the motion - 52.233-3, PROTEST AFTER AWARD (AUG 1996) and 52.242-14,

SUSPENSION OF WORK (APR 1984) (R4, tab 12 at 31-32). The Protest After Award clause states in pertinent part:

> (a) Upon receipt of a notice of a protest . . . the Contracting Officer may, by written order to the Contractor, direct the Contractor to stop performance of the work called for by this contract. The order shall be specifically identified as a stop-work order issued under this clause. . . . Upon receipt of the final decision in the protest, the Contracting Officer shall either-
>
> (1) Cancel the stop-work order; or
>
> . . .
> (2)
>
> (b) If a stop-work order issued under this clause is canceled either before or after a final decision in the protest, the Contractor shall resume work. The Contracting Officer shall make an equitable adjustment in the delivery schedule or contract price, or both, and the contract shall be modified, in writing, accordingly, if-
>
> (1) The stop-work order results in an increase in the time required for, or in the Contractor's cost properly allocable to, the performance of any part of this contract; and
>
> (2) The Contractor asserts its right to an adjustment within 30 days after the end of the period of work stoppage; *provided*, that if the Contracting Officer decides the facts justify the action, the Contracting Officer may receive and act upon a proposal submitted at any time before final payment under this contract.

(Emphasis in original)

2

3. By letter dated October 4, 2017, the contracting officer advised FDS that a bid protest had been filed. The contracting officer directed FDS to suspend any performance pending resolution of the protest and further notice from the government. The letter did not advise under which contract clause the stay was directed. (R4, tab 17)

4. By letter dated January 4, 2018, the contracting officer advised FDS that the protest had been denied and that a Notice to Proceed (NTP) would be forthcoming (R4, tab 18).

5. By letter dated January 18, 2018, the contracting officer issued the NTP to FDS (R4, tab 19).

6. By letter dated February 2, 2018, FDS notified the contracting officer that the joint venture intended to seek an equitable adjustment pursuant to the Protest After Award clause of the contract for the delay and additional costs it claimed to have experienced by reason of the bid protest (R4, tab 20 at 1-2).

7. By Serial Letter No. H-0005 dated April 16, 2018, FDS submitted a request for an equitable adjustment (REA) seeking $9,812,107 for several discrete items of work that it asserted had experienced cost impacts and a time extension of 40 days due to the delay caused by the bid protest (R4, tab 21 at 13).

8. Bilateral Modification No. P000001with an effective date of May 24, 2018, extending the contract performance period 83 calendar days pursuant to the authority of the Protest After Award clause, was issued. In pertinent part the modification stated:

> The need to increase the period of performance from 1,177 calendar days to 1,260 calendar days stems from the delayed of issuance of the Noticed to Proceed (January 18, 2018 in lieu of October 16, 2017) due to a protest after contract award. USACE's original solicitation dictated a period of performance of 1,260 calendar days; however, the contractor proposed a shorter period of performance of 1,177 days which the Government accepted and incorporated into the contract. As a result of the delayed Notice to Proceed, the contractor is no longer able to perform the contract in 1,177 days; therefore, as an equitable adjustment to the Contractor, the period of performance must be increased back to 1,260 days for a projected completion date of July 01, 2021.
>
> It is understood and agreed that pursuant to the above, the contract time is extended the number of calendar days stated. It is also understood that any contract price increases related to the

3

modification of contract will be discussed and negotiated separately from this modification and settled in conjunction with the Request for Equitable Adjustment dated April 16, 2018 and titled Request for Equitable Adjustment for Delivery Schedule and Contract Price due to Protest after Award.

(R4, tab 13)

9. Bilateral Modification No. P00003 with an effective date of September 14, 2018 awarded FDS $133,716 for " . . . additional costs incurred during the period of stop work from October 4, 2017 to January 4, 2018." The modification indicates the authority for the modification was provided by the contract's Protest After Award clause. The modification also states: "This modification only addresses what the Contractor refers to in serial letter H-0005 as 'Cost Element A', Tab D 'Impacts of Bid Protest'. The rest of the cost elements listed in H-0005 are still under review and are pending negotiations." (R4, tab 14)

10. After the parties were unable to negotiate the quantum amount for the asserted remaining cost increases, FDS updated its REA, breaking it into two parts, REA 1A and 1B. REA 1A was for the increased costs of rebar material in the amount of $2,535,617.08[1]. The Protest After Award clause was again asserted to be the basis for the authority for the adjustment sought. (R4, tab 27 at 3-4) REA 1B included costs for environmental related impacts, project escalations and overheads associated with the delay that had been related to the bid protest. The Protest After Award clause was also asserted to provide authority for this additional adjustment sought (R4, tab 28 at 7). REA 1B totaled $7,003,937.63[2] (*Id*. at 2).

11. By letter dated April 9, 2020, FDS converted REA 1A into a formal Contract Disputes Act, 41 U.S.C. §§ 7101-7109 (CDA) claim and requested a final contracting officer's decision (R4, tab 3). It did the same with REA 1B under date of June 24, 2020, revising the amount claimed to $8,429,578 (R4, tab 7).

12. The contracting officer denied the claims arising from REA 1A and 1B under date of August 2, 2021, except for $3,592.10 and $821,498.12 for the costs sought in REA 1A and 1B, respectively (R4, tabs 5, 9).

13. FDS timely appealed the decisions of the contracting officer, which were docketed as ASBCA Nos. 63019 and 63020 respectively (R4, tabs 2, 6).

---

[1] Subsequently revised to $2,516,488 (R4, tab 2).
[2] Subsequently further revised to $8,254,665 (R4, tab 6).

14. In its complaints, FDS pleads that it is entitled to and requested relief pursuant to the Protest After Award clause, which the contracting officer only partially granted (compl., ASBCA No. 63019, ¶¶ 2, 6-17; compl., ASBCA No. 63020, ¶¶ 2, 6-21).

POSITION OF THE PARTIES

The government argues there was no stop-work order, but instead a suspension under the Suspension of Work clause because stop-work orders do not apply to construction contracts. The government argues that because FDS relies only upon the Protest After Award clause, which refers to stop-work orders, not suspensions, the joint venture has failed to properly plead a claim. (Gov't mot. at 1-7) FDS argues the government is engaging in frivolous linguistic gymnastics, which ignore the facts and prior precedent (resp. br. at 2).

DECISION

We begin by noting that although we are not bound by the Federal Rules of Civil Procedure and the pleading rules found therein, nor specifically recognize motions to dismiss based on arguments that the pleadings fail to state a claim, we do entertain such motions. *Kandahar Mahali Transit Forwarding Ltd.*, ASBCA No. 62319, 20-1 BCA ¶ 37,635 at 182,725. A dismissal for failure to state a claim is appropriate only where the facts asserted in the complaint do not entitle the claimant to a legal remedy. *Matcon Diamond, Inc.,* ASBCA No. 59637, 15-1 BCA ¶ 36,144 at 176,407. The Board will grant a motion to dismiss for failure to state a claim when the complaint fails to allege facts plausibly suggesting a showing of entitlement to relief. *Lockheed Martin Integrated Sys, Inc.*, 17-1 BCA ¶ 36,597 at 178,281 (citing *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009)). When considering a motion to dismiss for failure to state a claim, "the court must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *Lockheed Martin Integrated Sys, Inc.,* 17-1 BCA ¶ 36,597 at 178,281 (quoting *Kellogg Brown & Root Services, Inc*. v. *United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013)). "We decide only whether the claimant is entitled to offer evidence in support of its claims, not whether the claimant will ultimately prevail." *Matcon Diamond, Inc*., 15-1 BCA ¶ 36,144 at 176,407. For purposes of assessing whether the claim states a claim upon which relief can be granted, the primary document setting forth the claim is not the complaint, but is the contractor's claim. *Lockheed Martin Integrated Sys, Inc.,* 17-1 BCA ¶ 36,597 at 178,281.

FDS has consistently asserted that the Protest After Award clause provides authority for the adjustment sought; first in its REA, subsequently converted to claims and finally in the complaints FDS has plausibly pled facts sufficient to suggest it is entitled to relief. We view the distinction the government attempts to draw between suspension and stop-work orders, limiting construction contracts such as the one involved in the appeals to suspensions and non-construction contracts to stop-work orders as being

5

meritless. The government's argument ignores FAR 33.106(b), which mandates the inclusion of the Protest After Award clause ". . . in all solicitations and contracts. . . ." not just non-construction contracts, as well as the two modifications issued by the contracting officer, both of which specifically state the Protest After Award clause provides the authority for the adjustment provided. We view this statement of authority in the modifications and not the contracting officer's use of "suspension" in the stop-work order as the more relevant and determining factor in deciding which of the two clauses are applicable. None of the cases cited by the government at page five of its motion support ruling that only "suspensions" can be made in construction contracts as the government argues in its motion.

Two decisions relied upon by the government to support its argument that the Protest After Award clause is inapplicable merit discussion, *CDM Constructors, Inc*. ASBCA No. 61074, 18-1 BCA ¶ 37,124 and *Beneco Enterprises, Inc*., ASBCA No. 46405, 96-2 BCA ¶ 28,531 (gov't. mot. at 4-6). If anything, *Beneco* provides some support for finding for FDS. The *Beneco* contract was an indefinite quantity SABER contract for construction at Kelly Air Force Base in Texas.[3] 96-2 BCA ¶ 28,531 at 142,463. As in this matter, work was suspended due to a protest filed shortly after award. *Id*. at 142,464. The contract included both the Protest After Award clause (FAR 52.233-3) and the Suspension of Work clause (FAR 52.212-12). *Id.* After the protest was filed the contracting officer issued a suspension of work letter, citing the Suspension of Work clause. *Id.* That course of action was in accordance with the government's argument in this appeal. Although not a holding in the appeal, the Board in *Beneco* stated this was erroneous and that the suspension should have been made pursuant to the Protest After Award clause. *Id.* at n.2. *CDM Constructors* also involved a construction project suspended shortly after award by a bid protest. The suspension letter did not cite either the Suspension of Work or the Protest After Award clauses, but the opinion indicates both were included in the contract. *CDM Constructors* at 180,680. The contractor submitted a claim for additional costs alleged to have been caused by the delay resulting from the roughly two-month suspension while the protest was decided. *Id.* at 180,682. The government moved for summary judgment, arguing the contractor could not establish the delay was unreasonable, which is a requirement under the Suspension of Work clause. *Id.* The Board granted the motion, but made no rulings regarding which clause was the appropriate one to use in the circumstances. *Id.* at 180,683-684. Instead, the Board found that the contractor had failed to establish that the claimed additional costs were caused by the suspension. *Id*. Neither *Beneco*, nor *CDM Constructors* persuades us that there is merit to the government's argument in this matter.

The circumstances of this matter most closely resemble those of *Hill Brothers Constr. Co.*, ENG BCA 5686, 90-3 BCA ¶ 23,276. That appeal also involved a

---

[3] SABER is an acronym for Simplified Acquisition of Base Engineering Requirements.

construction contract that had been suspended after a bid protest was filed. *Id*. at 116,739. The contractor subsequently filed a claim for additional costs alleged to have been incurred due to the suspension. *Id*. at 116,740. The claim initially relied on the Suspension of Work clause, but was later asserted to also be based on the Protest of Award clause before the contracting officer's final decision was issued. *Id.* Before the Board, the contractor primarily relied on the Protest After Award clause, but alternatively asserted that an unreasonable delay and suspension of work had occurred as well as a change. *Id.* at 116,741. The contracting officer denied the claim finding the Protest After Award clause was inapplicable because the Notice To Proceed had never been issued and no stop-work order actual, or constructive was involved. *Id.* After the contractor appealed this decision, both parties moved for summary judgment. *Id.* at 116,745. The Board ruled that there were material facts in dispute with respect to the two alternative arguments made by the contractor. *Id.* at 116,743. With respect to the Protest After Award argument the Board ruled in favor of the contractor, finding it was entitled to judgment as a matter of law. *Id.* at 116,743-745.

The government argues the plain language of the Protest After Award clause requires the suspension of work notice to be identified specifically as a stop-work order and not a suspension (gov't reply at 1). While the government is correct that the clause does require that any suspension pursuant to the clause be identified as a stop-work order this argument ignores the reality that both the contracting officer and FDS treated the suspension as having been made under the authority of the Protest After Award clause. The government also asserts that pursuant to FAR 42.1303 only an official above the level of the contracting officer can authorize a stop-work order (gov't reply at 4). Without offering any evidence to support its argument, the government is suggesting the contracting officer's actions were unauthorized. In the absence of any evidence to support its argument we find it unpersuasive.

CONCLUSION

For the reasons set forth above FDS has plausibly stated a claim and the government's motion is denied.

Dated: April 3, 2023

CHRISTOPHER M. MCNULTY
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63019, 63020, Appeals of Flatiron/Dragados/Sukut Joint Venture, rendered in conformance with the Board's Charter.

Dated: April 4, 2023

for Jammye D. Abbott

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

8